**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0412n.06

Case No. 16-1132

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 14, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FRANKIE LEWIS, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CITY OF DETROIT, et al., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | OPINION |
| | ) | |

**BEFORE: GRIFFIN, WHITE, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Plaintiffs are a group of Detroit police officers who claim that the City of Detroit Police Department ("Defendant") discriminated against them, based on their age, in promotion decisions. Plaintiffs filed suit against Defendant asserting a claim of age discrimination in violation of the ADEA and Michigan's comparable statute, the ELCRA. Defendant moved for summary judgement, and, finding no genuine issue of material fact, the district court granted that motion. Plaintiffs appeal. Because Plaintiffs fail to meet their burden, we **AFFIRM** the district court's judgement.

I.

A. Events Leading to the Lawsuit

Under former City of Detroit Chief of Police Ralph Godbee and Interim Police Chief Chester Logan, Plaintiffs all held appointments on the Chief's Executive Team/Command Staff. During Interim Police Chief Logan's reign, the collective bargaining agreement previously in place expired, and the City of Detroit imposed the City Employment Terms ("CET"), which gave the chief the ability to appoint/de-point his executive team without cause. Under the CET, upon de-appointment, employees would revert to the position they held prior to any appointment.

On July 1, 2013, James Craig ("Craig") became the Chief of the Detroit Police Department and subsequently made changes to the following command ranks: Assistant Chief, Deputy Chief, Commander, and Captain/Inspector. Prior to Chief Craig assuming his duties, Robert Wasserman ("Wasserman"), from Strategic Police Partnership, LLP, was hired as a consultant to the City of Detroit. Wasserman spoke with selected personnel at the command level and compiled files which contained, among other information, the officers' number of years on the job. Wasserman discussed those individuals, and his conversations with and assessments of them, with Craig.

Additionally, Craig met with the Command Staff's union president and informed him of the possibility of several command positions being eliminated. Craig's appointment process was unstructured and designed to be as informal as possible. On July 3, 2013, the department issued a teletype directing employees interested in applyingfor the positions of Deputy Chief/Assistant Chief to submit their resumes and cover letters. Several members of the department applied, including all of the Plaintiffs. None of the Plaintiffs, however, received interviews for positions

on the executive team. Most of the officers that held an appointment (i.e. command level position) prior to Craig's arrival did not retain their position.

Craig assumed his position with the mission of restructuring the department and selecting his leadership team. There were approximately ninety-two applicants for command staff positions out of 496 eligible members of the police department. Several appointees elected to retire rather than go through the application process (e.g., Robbin Rivers, Morris Wells, Paul Welles, Robert Ennis, etc.). Craig testified that he held the philosophy "every day is an interview" meaning any interaction could be assessed in an informal process of evaluation. R 13, Page ID #149. Craig further testified that although he did not have personal knowledge regarding some of the Plaintiffs, he based his decisions, in part, on recommendations from Wasserman. R 24, Page ID #646 ¶26.

B. The Plaintiffs

Plaintiff Duane McKissic, 51, a previous Commander, applied for Assistant Chief and Deputy Chief. Plaintiffs Frankie Lewis, 50, James Suchoski, 49, and John Serda, 59, all previous Commanders, applied for Deputy Chief. Plaintiff Gary Sroka, 60, applied to maintain his rank as Captain/Inspector.

Regarding Plaintiff McKissic (51), the trial court concluded Craig's motivation behind the decision not to promote McKissic was based on Craig's testimony that McKissic allegedly thought that others were more talented and deserving of command positions. R 30, Page ID #1137.

Regarding Plaintiff Frankie Lewis (50), the trial court stated: "Craig was informed that Major Crimes had an absence of leadership and management; therefore, the revocation of Lewis' appointed position, Commander of Major Crimes, was appropriate." R 30, Page ID #1137.

Craig testified that the only input that he received about Lewis was "retired in place." R 17-8, Page ID #450. Craig further testified, "major crimes has been – to this day has been a source of major concern for me, and I attribute the problems in major crimes to an absence of leadership and an absence of management." *Id*.

Regarding Plaintiff Sroka, the district court emphasized Craig's testimony that he received reports that Sroka did not interact well with others. The district court also pointed to Wasserman's notes referring to Sroka as an "older-cantankerous guy" who "loafed in [the] room." R 27-2; Page ID #829.

Regarding Plaintiff Serda, the district court emphasized Craig's testimony that Serda's section was in "total disarray," that the community stakeholders did not have confidence in Serda, as well as Assistant Chief White's statements critical of Serda's leadership. R 30, Page ID #1138.

Regarding Plaintiff Suchoski, Craig testified that Suchoski "doesn't come on my radar at all," "doesn't come to mind at all," "not hearing anything that jumps out." R 27-2, Page ID #846.

C. The District Court Case

Plaintiffs filed suit against Defendant on August 11, 2014. Count I of the Complaint alleged that Defendant discriminated against Plaintiffs in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Count II alleged that Defendant discriminated against Plaintiffs in violation of the Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq*. Plaintiffs' theory of the case was that Defendant treated them in a disparate manner and favored their younger colleagues with respect to the terms and conditions of employment, promotional opportunities, and compensation. On April 23, 2015,

Defendant filed a motion for summary judgement. On May 28, 2015, Plaintiffs filed their opposition to Defendant's motion for summary judgment. The district court held a hearing on the motion on October 8, 2015, and entered an order granting Defendant's motion for summary judgment on January 6, 2016.

Plaintiffs appeal. Plaintiffs assert that: (1) the district court erred in determining that Plaintiffs failed to establish a prima facie case of age discrimination under either the ADEA or the ELCRA and, thus, failed to properly construe facts in their favor in violation of the summary judgement standard; (2) the district court erred in determining that Defendant had a legitimate, non-discriminatory reason for the adverse employment actions taken against each Plaintiff-Appellant; and (3) the district court erred in determining that Plaintiffs failed to establish that Defendant's articulated reasons for its employment decisions were pretextual.

II.

This Court reviews a district court's grant of summary judgment *de novo*. *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016). A movant is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court draws all reasonable inferences and construes all evidence in favor of the nonmoving party. *Tingle v. Arbors at Hillard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). An issue is "genuine" within the meaning of Rule 56(a) "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, a fact is "material" within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law. *Id.* The relevant question is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

As the party moving for summary judgment, Defendant bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiffs' claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Like the district court below, we may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial. *Logan v. Denny's, Inc.,* 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil,* 188 F.3d 365, 369 (6th Cir. 1999).

### III.

The ADEA prohibits an employer from discharging an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the ELCRA provides that an employer shall not discharge an employee "because of" age. Mich. Comp. Laws § 37.2202(1)(a). Given this similar language, we have traditionally analyzed ADEA and ELCRA claims using the same causation standard. *See Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 702 (6th Cir. 2016) (collecting cases). More recently, however, the Supreme Court has clarified that an ADEA plaintiff must demonstrate that his "age was the 'but-for' cause of the challenged adverse employment action." *Id.* at 703 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)). Michigan courts, on the other hand, have held that an ELCRA plaintiff can prove discrimination if his age was merely a "motivating," or "determining factor in the employer's decision." *Town v. Michigan Bell Tel. Co.*, 568 N.W.2d 64, 68–69 (Mich. 1997); *see also Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 410 (Mich. Ct. App. 1997). Nevertheless, we need not decide whether *Gross* impacts causation under the ELCRA, as Plaintiffs have failed to

prove that age was either a but-for cause of, or a determining factor in, the adverse employment decisions at issue here. *See Richardson*, 836 F.3d at 703.

Notwithstanding their different causation standards, a plaintiff may prove age discrimination under both state and federal law using the approach enunciated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 704 (citing *McDonnell Douglas*, 411 U.S. at 792); *see also Town*, 568 N.W.2d at 695–96. Under *McDonnell Douglas*, a plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Plaintiffs here challenge the district court's decision on both grounds. However, there is no direct or circumstantial evidence of discrimination, nor have Plaintiffs pointed out any other grounds for a reasonable jury to find in their favor. These issues will be discussed in turn.

A.      Direct evidence of discrimination

As a preliminary matter, Plaintiffs have not presented direct evidence to support an age discrimination claim. "Direct evidence is evidence that, if believed, 'requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Thompson v. City of Lansing*, 410 F. App'x 922, 929 (6th Cir. 2011) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). In other words, "[d]irect evidence must prove not only discriminatory animus, but also that the employer acted on that animus." *Johnson v. Metro. Gov't of Nashville*, 502 F. App'x 523, 534 (6th Cir. 2012).

Plaintiffs presented the following as direct evidence of age discrimination:

- Craig allegedly knew Plaintiffs ages.
- Craig made references to some of the Plaintiffs as "retired in place."

- Suchoski testified that Wasserman asked his age.

- Wasserman noted a description of Sroka as an "old cantankerous guy."

Plaintiffs argue that the district court erred when it concluded that Craig did not know Plaintiffs' ages. Plaintiffs contend there is evidence that Craig knew Plaintiffs' ages. Plaintiffs assert that Wasserman's conversations with Plaintiffs demonstrate concerns about age, because Wasserman both directly and indirectly ascertained Plaintiffs' ages and age-related information during his conversations with Plaintiffs.

Initially, an employer's alleged age animus must be based upon more than mere speculative possibility. *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Plaintiffs' belief that Craig knew their ages does not rise to the level of direct evidence needed to support an age discrimination claim. Not only did Craig testify that he did not know Plaintiffs' ages, Plaintiffs fail to present evidence that supports a *reasonable* inference that Craig knew their ages.

The core of Plaintiffs' argument is that the information collected from Wasserman about Plaintiffs' seniority dates, years of service, etc. was indirect evidence of their ages. However, the Supreme Court, in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993), explained that, "an employee's age is analytically distinct from his years of service.…Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" Therefore, Plaintiffs' reliance on evidence that Wasserman collected information on Plaintiffs' years of service as a basis for ascertaining their ages is immaterial in establishing direct evidence of age discrimination.

Plaintiffs also contend that Wasserman's notes about Sroka as an "old cantankerous guy" and the testimony from two Plaintiffs that Wasserman asked them their age are sufficient evidence to create doubt as to whether Craig knew Plaintiffs' ages when making promotion decisions. Although Wasserman's notes regarding Sroka state "old cantankerous guy," it is not clear whether this statement was a quote made by someone Wasserman was interviewing or whether this information was an assessment of Sroka's age. Further, even if Wasserman asked two Plaintiffs their ages, there is no evidence this information was given to Craig.

Finally, Plaintiffs contend Craig's characterization of several of Plaintiffs' as "retired in place" is direct evidence of age discrimination. For one, this is not "direct evidence" of discrimination because use of the word "retired" does not "require[] the conclusion" that Craig harbored age-based animus. *Wexler*, 317 F.3d at 570. For another, Plaintiffs did not present any evidence that "retired in place" was a term used to denote age as opposed to Defendant's statement that the term was used to denote the employee had ceased to be productive, or in Craig's words, "there was an absence of leadership…absence of management." (Def. Br. 18.). Plaintiffs did not present any direct evidence that Craig both knew Plaintiffs' ages *and* he made the employment decisions based on that knowledge.

In short, the district court correctly concluded that none of these claims rise to the level of direct evidence necessary to prove a claim of discrimination. Since there is no direct evidence of age discrimination, Plaintiffs must rely on circumstantial evidence.

B.     Circumstantial Evidence

"Circumstantial evidence…is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler,* 317 F.3d at 570 (citation omitted).

A three-step framework guides the analysis of age-discrimination claims based upon circumstantial evidence. *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 350 (6th Cir.1998) (explaining the burden-shifting analysis for ADEA claims). This framework first requires an employee to establish a prima facie case of age discrimination. *Id.* If the employee meets this burden, the employer may respond by offering a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Id.* Assuming that such a response is made, the employee then bears the burden of rebutting this proffered reason by proving that it was a pretext designed to mask age discrimination. *Id.*

C.     Prima Facie Case

To set forth a prima facie case of age discrimination using circumstantial evidence, a plaintiff must establish the four elements of the well-known *McDonnell Douglas* test: 1) that he was a member of a protected class; 2) that he was subject to an adverse action; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citing *Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005). Both sides agree the dispute here lies in the fourth prong. In ADEAcases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not only by a person outside the protected class, but replacement by a significantly younger person. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). If the termination arises as part of a work force reduction,

this Court has further modified the fourth element to require the plaintiff to prove "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990); *see also Meagher*, 565 N.W.2d at 413 (noting a similar increased evidentiary burden applies in work force reduction cases under the ELCRA).

The threshold question is thus whether Defendant made the promotion decisions in the context of a work force reduction. "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Barnes*, 896 F.2d at 1465*Id*. A person is considered replaced "only when another employee is hired or reassigned to perform the plaintiff's duties." *Id*. Comparatively, a person is not replaced when his duties are absorbed by another person or "when the work is redistributed among other existing employees already performing related work." *Id*.

It is clear in this case that Plaintiffs suffered the adverse employment action as part of a workforce reduction program. There was a department-wide reorganization where all command level officers, not just Plaintiffs, were demoted, many positions were eliminated, and every officer was required to reapply for a command level position.

Because Plaintiffs' complaints arise from a work force reduction, those who were not replaced by younger workersmust provide additional evidence to establish a prima facie case of age discrimination. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 592-93 (6th Cir. 2006). Defendant acknowledges that it replaced two Plaintiffs directly: Lewis (50) was replaced by Gianquinto (45) and Sroka (60) was replaced by Jarvis (52). Thus, the additional evidentiary burden does not apply to them. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir.

2014) (noting the plaintiff "does not need to meet the heightened standard" of *Barnes* where he demonstrated sufficient evidence to prove he was in fact replaced by a younger employee). *Barnes* does, however, apply to McKissic, Suchoski and Serda, as Defendant eliminated their positions. We address their claims first.

"The guiding principle [in reduction in force case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767-68 (6th Cir. 2004) (quoting *Barnes*, 896 F.2d at 1466). The evidence presented by Plaintiffs is not. Plaintiffs McKissic, Suchoski, and Serda primarily offer the following statistical evidence as circumstantial proof of age discrimination:

- Statistical evidence that the average age of the Commander population dropped significantly as a result of the reorganization.

- Statistical evidence that the oldest captain/inspectors were displaced while almost all of the younger employees received promotions.

- Statistical evidence that there was a disproportionate impact upon employees over age 45.

Plaintiffs take issue with the district court's analysis of these statistics.

For statistics to be valid and helpful in a discrimination case, "both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987) (citation omitted). Conversely, a sample size that is too small can undercut the probative value of the statistics. *Id*. at 943. In *Simpson*, this Court noted,

> Statistically, the average age of employees always changes. Even in a total absence of employee turnover, average age increases because each person naturally ages over time. Since **the departure of even one older employee will inevitably produce a reduction in average age**, the fact that the average age in Simpson's small department decreased by

approximately one year due to his discharge demonstrates nothing of statistical significance.

*Id.* (emphasis added).

Although Plaintiffs presented statistical evidence that the average age of command level officers pre and post-reorganization decreased from 53.4 years to 44 years, this change is deceptive because several command level officers elected to retire as opposed to going through the selection process. Inspector Robbin Rivers (56), Deputy Chief Morris Wells (61), Assistant Chief Paul Wells (54), and Commander Robert Ennis (62) all chose to retire before the reorganization and only one of those command level officers (Enis) was included in Plaintiffs' statistical averages. If Plaintiffs included the other three command level officers' ages in their statistical analysis, this would have surely changed the average age of commanders pre and post reorganization.

This is especially true considering that Plaintiffs' statistics were based on a pool of nine commanders. Although there is no bright line rule for whether a sample size has probative value, *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 593 (6th Cir. 2002), leaving out command level officers from the statistical evidence can skew such a small sample size. As this Court in *Simpson* explained, the departure of even one older employee will inevitably produce a reduction in average age. *Simpson*, 823 F.2d at 943. In this case, even if the sample size is sufficient, the departure of four command level officers over the age of 50 inevitably skewed the average age of the command level officers remaining when the sample was only nine officers, thus rendering the statistics unreliable.

Plaintiffs also provide statistical evidence that the reorganization had a disproportionate impact on employees over age 45 where 52% of those employees were demoted, 24% stayed in place, and only 24% received promotions. At best, these statistics suggest a disproportionate

impact. Disparate impact claims are actionable under the ADEA, *see Smith v. City of Jackson*, 544 U.S. 228, 240 (2005), but plaintiffs here have not asserted such a claim. They allege only intentional, disparate treatment discrimination. (*See* Amended Complaint, R. 5, ID 16-25).

Although statistical evidence is relevant in some cases, it is not persuasive here. The district court was correct in concluding the statistical data is sufficiently rebutted by Defendant and could not support an inference of discrimination. Accordingly, McKissic, Suchoski, and Serda have failed to establish prima facie claims of age discrimination.

With respect to Lewis and Sroka's claims, the district court applied our decision in *Grosjean*. This Court in *Grosjean* determined that "an age difference of six years or less between an employee and a replacement is not significant" under the ADEA. *Grosjean*, 349 F.3d at 340. Defendant replaced Lewis (50), with the 45-year-old Gianquinto. Accordingly, because Gianquinto was not "significantly younger" than Lewis, Lewis has not established a prima facie claim of age discrimination under *Grosjean*. However, Sroka has. Defendant replaced Sroka (60) with the 52-year-old Jarvis, an employee more than six years his junior. Thus, Sroka has stated a prima facie ADEA claim.

A different analysis applies to Plaintiffs' ELCRA claims. The ELCRA does not impose an age forty protected class requirement, and Michigan courts have not adopted the *Grosjean* standard for replacement employees. Instead, "[a]n ELCRA plaintiff need only show replacement by a younger individual"—as Lewis has in this case. *Gibbs v. Voith Indus. Servs., Inc.*, 60 F. Supp.3d 780, 793 (E.D. Mich. 2014) (citing *Winter v. Fitness USA Health Spas Corp.*, No. 188648, 1999 WL 33430030, *2 (Mich. Ct. App. Nov. 12, 1999) (per curiam)). Thus, while Lewis has not established a prima facie claim under the ADEA, he and Sroka have both

demonstrated a prima facie claim under the ELCRA. We therefore address pretext with respect to both Plaintiffs.

> D.     Pretext

In response to the prima facie showing, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas Corp.*, 411 U.S. at 802. An employer's proffered reason for the adverse employment action must address the actions taken against the particular employee. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). This means the employer cannot merely present vague, generalized, nebulous, or unclear reasons for its decision. Rather, the proffered reason must be both "clear" and "reasonably specific." *Id.* at 258.

The City has met this standard. In addition to providing general reasons why some Plaintiffs were not promoted (i.e. observations, discussions with rank and file, discussions with the consultants, discussions with the community groups, the fact that no one recommended them and they did not stand out), Defendant articulated nondiscriminatory reasons for the promotion decisions for each Plaintiff individually, including Sroka and Lewis.

Sroka points out that Wasserman took similar notes regarding himself, calling him an "old cantankerous guy," and Assistant Chief Eric Jones (45), whom Wasserman described as "abrasive and arrogant." Yet Jones was promoted and Sroka was not, which Plaintiffs argue is proof of age discrimination. However, comparing the full reference from Wasserman's notes it is clear that, although Jones had some negative traits, he also possessed positive traits.

The full reference for Sroka is as follows:

*Gary Sroka – Inspector – N. East*
*"Older-cantankerous guy"*
*Loafed in room*
R 27-2, Page ID #829.

The full reference for Jones is as follows:

*Eric Jones*
*Go-getter, abrasive*
*Arrogant, gets job done*
*R 27-2, Page ID #827*
*Motivator, CompStat driver*
*Take no prisoners type of guy*
*Can run afoul of him*
*R 27-2, Page ID #828*

Comparing the full references, these are not similar critiques. Sroka was described as a loafer, whereas Jones was described as one that gets the job done. Furthermore, these notes were compiled based on interviews that Wasserman had with Sroka's peers, not just Wasserman's own observations. The reference to Sroka as an "older-cantankerous guy" may not have been Wasserman's observation about Sroka's age but may have been a quote from one of Sroka's peers. Either way, Craig was able to articulate reasonably specific facts as to why he did not promote Sroka. He testified that Sroka struggled in interactions with people. Craig "found th[is] problematic," because he considered the manner in which "management interacts with rank and file" a "chief" concern in every law enforcement job. (R. 17-8, ID 458-59). This is a legitimate, nondiscriminatory reason not to promote Sroka.

Finally, Plaintiffs contend the record does not support the district court's finding that Defendant proffered a legitimate, nondiscriminatory reason for not promoting Lewis. Plaintiffs point to Craig's testimony characterizingLewis as "retired in place" and the unidentified individuals who gave Craig input on Lewis. However, Craig's reference to "retired-in-place" was an assessment of Lewis' performance. "Retired-in-place" meant "someone is complacent, non-effective, essentially taking up a spot but not doing the work." R 17-10, Page #478. Craig's explanation for the phrase was also consistent with his conclusion that the major crimes unit had suffered from "an absence of leadership" under Lewis's tenure. (R. 17-8, ID 450). This

performance based critiquedoes not suggest a pattern or practice of age-animus or a "corporate culture" against older workers. Moreover, it was a legitimate, nondiscriminatory reason to deny Lewis a promotion. Lewis's disagreement with the "soundness of [Craig's] business judgment" is not proof of age-based animus. *See Dubey v. Stroh Brewery Co.*, 462 N.W.2d 758, 760 (Mich. Ct. App. 1990). Sroka and Lewis have not demonstrated pretext, and their claims fail equally under state and federal law.

### IV.

Since this case is akin to a workforce reduction case, McKissic, Suchoski, and Sedra were required to meet a heightened standard of evidence to prove age discrimination. They did not. Likewise, Lewis and Sroka have offered no evidence to suggest that Craig's reasons for denying them promotions were pretext for age discrimination. For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.

**HELENE N. WHITE**, Circuit Judge, dissenting.

Defendant acknowledged that Plaintiffs Serda and Sroka could establish prima facie cases, PID 685-86, and disputed only the fourth prima facie prong as to Plaintiffs Lewis, McKissic and Suchoski. PID 685. To meet the fourth element of a prima facie case of age discrimination under Michigan's Civil Rights Act (MCRA), these three Plaintiffs must present admissible evidence that Defendant took an adverse employment action against them under circumstances that give rise to an inference of unlawful discrimination. *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 523 (Mich. 2001); *Lytle v. Malady*, 579 N.W.2d 906, 914 (Mich. 1998).

Lewis, McKissic, and Suchoski, who were demoted to Lieutenant, a non-command-level position, PID 65 n.33, 1174-75, presented the following circumstantial evidence of age discrimination. Chief Craig did not review any of their performance records, did not meet with them individually, and none were interviewed. Assistant Chief Eric Jones testified that he, Chief Craig, and Assistant Chief James White interviewed four applicants for the deputy chief position, but that he did not see a list of applicants or know who had applied. Jones acknowledged that there was weeding out prior to interviews but he did not know why or how the weeding out was done. Jones testified that three of the four persons interviewed were promoted. PID 1169-70/Jones Dep. A reasonable jury could conclude from Jones's testimony that older applicants for the Deputy Chief position were weeded out of the candidate pool very early in the process, i.e., before it was determined who would be interviewed. Regarding how Plaintiffs were weeded out, it is undisputed that consultant Wasserman spoke to each Plaintiff and that Craig relied on Wasserman in determining whom to promote. Plaintiffs testified that Wasserman's conversations with them evinced concerns about age. And Wasserman's notes, which were submitted to the district court, state regarding McKissic, "26.5 years on job," regarding Lewis

"24 years," regarding Suchoski, "25 years," and regarding Sroka, "older cantankerous guy" and "loafed in room."  PID 824, 825, 829, 830.

Plaintiffs also presented evidence that Chief Craig characterized several Plaintiffs as "retired in place."  Deputy Chief David LeValley testified that he heard Craig use that phrase during the restructuring and appointment process.  PID 478.  Craig's post hoc explanation of what he meant by that phrase and Defendant's explanations for Wasserman's age-related questions and comments notwithstanding, Plaintiffs presented sufficient evidence that Craig demoted Plaintiffs under circumstances that give rise to an inference of unlawful discrimination. *Hazle*, 628 N.W.2d at 523.

Plaintiffs having established a prima facie case of age discrimination under Michigan's CRA, a presumption of discrimination arises and the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment actions, demoting Plaintiffs. *Id.*[1]  The overarching reason Defendant articulated for demoting Plaintiffs was that Chief Craig

---

[1] As the Michigan Supreme Court observed in *Lytle*:

> At this stage, defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.  To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.  The explanation provided must be legally sufficient to justify a judgment for the defendant.  If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.  [*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981) (citations omitted).]

> Once the defendant produces such evidence, even if later refuted or disbelieved, the presumption drops away, and the burden of proof shifts back to plaintiff.  At this third stage of proof . . . plaintiff had to show, by a preponderance of admissible direct or circumstantial evidence, that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination.

*Lytle*, 579 N.W.2d at 915.

possessed the authority to restructure and appoint whomever he pleased under the CET, the Emergency Manager order, and the DPD's restructuring plan, which called for positions to be eliminated and combined. PID 692/Def.'s Supp. Br. in Support of Mo. for Summ. Disposition, PID 684.

This assertion of broad authority does not meet the requirement of *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981), that a defendant "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate nondiscriminatory reason."

Defendant articulated additional reasons for demoting Plaintiffs, pointing to Chief Craig's "testimony . . . explaining how individuals were selected (e.g., through observations, conversations with rank and file, discussions with the consultants, interactions with various members). PID 695. Craig testified that he remembered nothing about Suchoski, that no one recommended McKissic and nothing stood out about him, that his recollection regarding Lewis was that one or two people viewed him as "retired in place," and that his "impression" of Sroka was that he struggled with interactions with people. Craig did not know from whom he heard that Lewis was "retired in place," and did not know how, where, or from whom he gained the impression regarding Sroka. PID 451-52. Yet he apparently viewed this information as reason to exclude Plaintiffs from participating in the interview/promotion process.

These additional reasons also fail under *Burdine* because they do not constitute "a clear and reasonably specific factual basis" for demoting Plaintiffs. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392–93 (6th Cir. 2008); *Hunter v. Lantech, Inc.*, 755 F.2d 932, at *1 (6th Cir. 1985) (table). As the Fifth Circuit observed in *Alvarado v. Texas Rangers*:

> An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve

as a legitimate, nondiscriminatory reason for the candidate's non-selection. *See* [*Patrick v. Ridge*, 394 F.3d 311,] 317 [(5th Cir. 2004)] (recognizing that *McDonnell Douglas* does not preclude an employer from relying on subjective reasons for its personnel decisions); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation."). Such a reason will satisfy the employer's burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment. *See Burdine*, 450 U.S. at 258; *Patrick*, 394 F.3d at 316–17; *see also Chapman*, 229 F.3d at 1034 ("A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."); *EEOC v. Target Corp.*, 460 F.3d 946, 957–58 (7th Cir. 2006) (agreeing with the Eleventh Circuit that "an employer must articulate reasonably specific facts that explain how it formed its [subjective] opinion of the applicant in order to meet its burden under *Burdine*").

*Alvarado*, 492 F.3d 605, 616–17 (5th Cir. 2007).

Whether Defendant articulated a sufficiently specific legitimate, non-discriminatory reason for demoting Plaintiffs is thus questionable. In any event, even assuming Defendant's proffered reason(s) satisfied *Burdine*'s "clear and reasonably specific basis" requirement, Plaintiffs presented sufficient evidence of pretext to survive summary judgment. Pretext is established by demonstrating that the proffered reason either (1) had no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to warrant the adverse action. *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). Here, Defendant asserted that Plaintiffs were demoted as part of a restructuring of the DPD that involved an assessment of their qualifications unrelated to age. But there was a complete absence of transparency in Craig's "restructuring." Craig did not review Plaintiffs' files or interview any Plaintiff and testified he knew little or nothing about them. Wasserman, on whom Craig heavily relied, obtained age-related information about Plaintiffs. On the record before us, a reasonable jury could conclude that no objective standards or criteria guided Craig's restructuring and given

Craig's "retired in place" remarks and Wasserman's notes reflecting age concerns, that a mentality of "out with the old and in with the younger" guided Craig's determinations on who to promote. A reasonable jury could disbelieve that an age-neutral qualifications assessment actually motivated, or was sufficient to warrant, Plaintiffs' demotions, thus summary judgment in Defendant's favor was improper.

As for Plaintiffs' ADEA claims, under the ADEA generally, a plaintiff establishes the fourth prima facie prong by showing that he was replaced by a person who is both outside of the protected class, i.e., under 40 years of age, and significantly younger. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). However, as we observed in *Grosjean*, a "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.* at 336 (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

The district court applied *Grosjean*'s "significantly younger" requirement and concluded that Suchoski, McKissic, and Lewis failed to establish the fourth prima facie element of their ADEA claims. PID 1132-33. However, because there were no one-on-one replacements for the demoted Plaintiffs, *Grosjean* is inapplicable.

The district court concluded that Serda did not establish the fourth prima facie element, even though a significantly younger applicant was chosen to fill the new position created in place of Serda's former commander position, observing, "that [the fact that] Serda was replaced by a younger individual does not, on its own, create an inference of age discrimination." PID 1134. However, Plaintiffs put forth additional circumstantial evidence of discrimination—that Craig

did not review Plaintiffs' files; in determining whom to promote, Craig relied on Wasserman, whose notes stated Plaintiffs' years of service; that older applicants were weeded out before it was determined which applicants would be interviewed; and that Craig characterized several Plaintiffs as "retired in place."

Finally, regarding Sroka, the district court concluded that although he was replaced by a significantly younger person, he failed to establish that age was the but-for cause of his demotion since Craig relied on "recommendations and discussions with Sroka's co-workers during which it was reported that Sroka did not interact well with others" and Wasserman noted that Sroka was an "older cantankerous guy/loafed in room." PID 1136. But given the additional evidence of age discrimination, these were questions of fact for a jury.

The district court went on to determine that, even assuming that Plaintiffs established prima facie ADEA claims, Defendant articulated a legitimate non-discriminatory reason for demoting Plaintiffs. As discussed with respect to the MCRA claims, this was error.

For these reasons, I would reverse.