RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

REVA E. RICHARDSON,

        *Plaintiff-Appellant,*

    *v.*

WAL-MART STORES, INC.,

        *Defendant-Appellee.*

No. 15-1142

─────────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:13-cv-00860—Phillip J. Green, Magistrate Judge.

Argued: December 3, 2015

Decided and Filed: September 9, 2016

Before: DAUGHTREY, COOK, and WHITE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Timothy H. McCarthy, MCCARTHY LAW GROUP P.C., Okemos, Michigan, for Appellant. Michael P. Palmer, BARNES & THORNBURG LLP, South Bend, Indiana, for Appellee. **ON BRIEF:** Timothy H. McCarthy, MCCARTHY LAW GROUP P.C., Okemos, Michigan, for Appellant. Michael P. Palmer, BARNES & THORNBURG LLP, South Bend, Indiana, Susan M. Zoeller, BARNES & THORNBURG LLP, Indianapolis, Indiana, for Appellee.

─────────────────

## OPINION

─────────────────

    MARTHA CRAIG DAUGHTREY, Circuit Judge. Following a safety-hazard incident, defendant Wal-Mart Stores, Inc., terminated plaintiff Reva Richardson's employment at Wal-

1

Mart's Lansing, Michigan, store. At the time she was fired, Richardson was 62 years old. She sued Wal-Mart in Michigan state court, alleging age discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws §§ 37.2101–2804. After Wal-Mart removed the case to federal court based on diversity jurisdiction, the district court granted Wal-Mart's motion for summary judgment, finding that Richardson lacked direct evidence that her termination was based on her age and that Richardson failed to establish that Wal-Mart's stated nondiscriminatory reason for her discharge was pretextual. On appeal, Richardson challenges both determinations. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Richardson began working at Wal-Mart's Lansing store in November 2000. Over the course of her 12-year employment at the store, Richardson held several positions, including department manager and customer-service manager. The last job that she held at the Lansing store was as an hourly associate in Wal-Mart's reclamation department, in which Richardson was tasked with "handling claims and returns," "arranging and organizing merchandise/supplies," and "ensuring a safe work environment" in accordance with Wal-Mart's policies and procedures. Richardson was supervised by a team of managers at the Lansing store, and her annual performance evaluations were generally positive, resulting in raises in her hourly wage. However, Richardson also was subject to disciplinary actions, or "coachings," while she was employed as an hourly associate.

Pursuant to Wal-Mart's disciplinary policy, an associate receives a level of "coaching" if the associate's job performance does not meet Wal-Mart's expectations or otherwise violates Wal-Mart's policies and procedures. Because coachings are part of a progressive disciplinary-process, an associate will receive a higher level of coaching if she already has an active coaching-level in her record, and her conduct merits an additional coaching. The first three levels of the coaching process are "written coachings," and the fourth level is termination from employment. The manager issuing a coaching, along with a second manager acting as a witness, reviews the coaching document in a meeting with the associate. For each coaching level, the two managers electronically acknowledge the coaching document by inputting their Wal-Mart system user-names and passwords into the electronic coaching-document. For the second and third

coaching levels, but not the first, the associate is required to "develop a plan of action to correct the problems or concerns that exist" and electronically acknowledge the coaching document by inputting her Wal-Mart system user-name and password. An associate may dispute a coaching through Wal-Mart's "Open Door" policy, in which the associate may bring her dispute to senior managers.

Richardson received her first coaching on January 22, 2011, when she attempted to influence the exchange of her daughter's damaged laptop computer for a working one. The manager issuing the coaching, Paul Borema, "believed that Ms. Richardson had put herself in a position that created or at least raised the appearance of a conflict of interest and questioned her integrity." Borema issued Richardson a verbal coaching (now called a "first written coaching"), with Assistant Manager Denise Lab acting as a witness. Although Richardson later said that the meeting was not "disciplinary action" and that she did not recall seeing the first-coaching-level document, she did not dispute that she met with Borema and Lab regarding the laptop incident.

Store Manager Mark Darby, along with a shift manager acting as witness, issued Richardson her second written coaching on September 9, 2011, when Richardson failed to package properly a regulated hazardous-material item that had been returned to the store. Richardson electronically acknowledged the coaching, and she drafted an action plan acknowledging that she "need[ed] to be more careful when scanning items to be retu[rned]" and committing to use her coaching "as a learning tool to go forward so that [she did] not make this mistake again."

Richardson received her third written coaching on August 27, 2012, for violating Wal-Mart's attendance policy by having four unscheduled absences from work in a six-month period.[1] Richardson drafted an action plan promising to "come to work when . . . scheduled" and acknowledging the coaching document. During her coaching meeting, Richardson explained to the manager who initiated the coaching, Adam Eschtruth, that her most recent unscheduled absence was for medical treatment for a bee sting. The record reflects that Eschtruth asked

---

[1]Pursuant to Wal-Mart's attendance policy, an associate may accrue up to three absences in a six-month period, but upon accruing a fourth absence, the associate receives a coaching. An associate accrues an absence "when an associate calls off work" or when "she is tardy or leaves early (without approval) on three occasions within a six-month period." An absence for three consecutive days for the same reason counts as only one absence.

Richardson for documentation of her medical treatment, but Richardson did not provide Eschtruth with any documentation. Richardson, instead, used the Open Door process to challenge the third coaching, addressing the issue with managers Jason Piotrowski and Diane Behnke, both of whom decided that the third coaching was appropriate. Richardson did not pursue further her challenge to the third coaching. The resulting document stated: "The next level of action if behavior continues is: Termination."

Richardson claims that in November and December 2012, she began to perceive that she was being mistreated by members of the Wal-Mart management team. She asserts that Darby "humiliated" and "taunted and shamed her" by screaming at her, embarrassing her in front of a vendor, and throwing out her food items. Richardson further contends that Darby and Eschtruth treated two of the younger associates more favorably than her. Richardson claims that Eschtruth said to Richardson's son, who also was an employee at Wal-Mart's Lansing store, "[W]e need to get rid of Reva, she's too old to work here anymore." Richardson also claims that Eschtruth asked her several times during her evaluation meeting when she was going to "quit" or "leave" Wal-Mart, to which Richardson responded, "When I can no longer walk."

In late November 2012, Eschtruth left Wal-Mart's Lansing store and was transferred to Wal-Mart's Okemos store. Richardson does not dispute that Eschtruth was not working at the Lansing store at the time of Richardson's discharge. Eschtruth claims that he "had no input into the decision to terminate Reva Richardson's employment" and was not in contact with Darby, who made the decision to fire Richardson. Richardson claims that she learned from her colleague, several weeks before she was fired, that Darby and the assistant managers "want[ed] [her] out of the store," and that "they were looking for any excuse they could find to get [her] out of the store."

On March 1, 2013, Richardson was stacking merchandise on two pallets on a portable table and an "L-Cart." As Richardson stepped backwards from one of the pallets, she tripped over the corner of the L-Cart, falling and breaking her wrist. As part of his investigation into Richardson's accident, Darby reviewed a surveillance video that captured the incident. After reviewing the video, Darby concluded that Richardson had created a safety hazard through her placement of the L-Cart and that she should have looked behind her before she walked

backwards.  Two other managers reviewed the video and reached a similar conclusion.  Darby thus decided that Richardson should receive a coaching for failure to follow proper workplace-safety standards.  However, because Richardson already had three active coachings, Darby concluded that the coaching for unsafe work practices would result in the fourth step of Wal-Mart's coaching policy:  termination.  Darby asked managers Vaillancourt and Piotrowski to conduct the exit interview with Richardson.  Richardson was fired on March 25, 2013.  Richardson, Vaillancourt, and Piotrowski electronically executed the exit-interview document, which stated that Richardson "demonstrated unsafe work practices which resulted in an accident" and listed "Misconduct With Coachings" as the termination reason.

Richardson filed suit against Wal-Mart in Michigan state court, alleging intentional infliction of emotional distress and age and race discrimination in violation of the ELCRA.  Based upon the complete diversity of the parties, Wal-Mart removed the case to federal court, where Wal-Mart and Richardson consented to disposition by a magistrate judge.  Richardson subsequently voluntarily dismissed the race-discrimination and emotional-distress claims, leaving only the age-discrimination claim.  Wal-Mart moved for summary judgment, which the magistrate judge granted.  From that ruling, Richardson now appeals.

## DISCUSSION

We review *de novo* the grant of summary judgment by a district court.  *Dodd v. Donahoe*, 715 F.3d 151, 155 (6th Cir. 2013).  Summary judgment will be granted if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party.  *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).  A non-moving party cannot withstand summary judgment by introduction of a "'mere scintilla' of evidence" in its favor.  *Id.* (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

The Michigan ELCRA prohibits the discharge of an employee because of age. Mich. Comp. Laws § 37.2202(1)(a). We have analyzed ELCRA claims using the standard that we apply to claims brought under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. *See, e.g.*, *Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012); *see also Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009). To prevail on an ADEA claim, the plaintiff must demonstrate that "age was the 'but-for' cause of the challenged adverse employment action," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (citing *Gross*, 557 U.S. at 177-78). The district court applied a but-for causation standard to Richardson's ELCRA claim. Richardson, however, argues that the district court applied the wrong standard and that, to prevail on her ELCRA claim, she must demonstrate only that age was a determining factor in the adverse employment decision. However, we need not decide today which causation standard applies to ELCRA claims because under either the but-for standard or the determining-factor standard, Richardson's age-discrimination claim fails.

A claim of age discrimination may be proven through either direct or circumstantial evidence. Direct evidence of age discrimination proves the existence of discriminatory bias "without requiring any inferences." *Scheick*, 766 F.3d at 530 (internal quotation marks and citation omitted). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011) (internal quotation marks and citation omitted).

**Direct Evidence**

If discriminatory statements are offered as direct evidence of discrimination, those statements "must come from [the] decisionmakers" responsible for the adverse employment decision. *Geiger*, 579 F.3d at 620-21. "Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating animus." *Id.* at 621 (internal marks and citation omitted).

Richardson argues that two statements by Eschtruth—his remark that Richardson was too old to be working and his questions to Richardson regarding when Richardson was going to "quit" or "leave" Wal-Mart—are direct evidence of age discrimination. However, *Darby*, not Eschtruth, was the decisionmaker that terminated Richardson's employment. At the time that Richardson was fired, Eschtruth had not been working at the Lansing store for at least four months. Richardson offered no facts to dispute that Eschtruth had no input into Darby's decision to terminate Richardson's employment. Because Eschtruth was not involved in the firing decision, his statements do not qualify as direct evidence of age discrimination. *See Geiger*, 579 F.3d at 621.[2]

In her final attempt at establishing direct evidence of age discrimination, Richardson claims that Darby exhibited a "pervasive pattern of discriminatory conduct" toward her. During her deposition, Richardson testified that Darby treated her differently from younger employees. For example, Richardson testified that Darby, among other things, stared at her, did not greet her in the mornings, and embarrassed her in front of her colleagues and outside vendors. Although these facts demonstrate that Darby probably did not like Richardson, none of these facts evidences discrimination on the basis of *age*. At best, these facts require additional inferences to tie Darby's actions to discriminatory animus. Because neither Eschtruth's statements nor Darby's conduct compels the conclusion that she was fired because of her age, Richardson's direct-evidence argument for her age-discrimination claim fails.

**Circumstantial Evidence**

When analyzing age-discrimination claims based on circumstantial evidence, we apply the burden-shifting framework set forth by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Provenzano*, 663 F.3d at 811-12. Under this framework, the plaintiff first must establish

---

[2]Richardson cites *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789 (6th Cir. 2013), as support for her argument that Eschtruth's statements are direct evidence of discrimination, but *Sharp* is factually distinguishable. In *Sharp*, the court found that statements made by the plaintiff's supervisor were direct evidence of age discrimination even though the supervisor was not the person that ultimately terminated the plaintiff's employment. *Id.* at 798-99. However, the factual record in *Sharp* indicated that the decisionmaker that fired the plaintiff "relied solely on [the supervisor's] forced rankings and recommendation of who[m] [the company] could fire without disrupting current projects." *Id.* at 797. Here, Eschtruth did not have any input into the decision to terminate Richardson, and Richardson offers no facts that suggest otherwise.

a *prima facie* case for age discrimination. *Id.* at 812. To establish a *prima facie* case of age discrimination, the plaintiff must demonstrate that: "1) that she was a member of a protected class; 2) that she was discharged; 3) that she was qualified for the position held; and 4) that she was replaced by someone outside of the protected class." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010). The burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision. *Provenzano*, 663 F.3d at 812. If the employer meets this burden, "the employee then bears the burden of rebutting this proffered reason by proving that it was pretext designed to mask discrimination." *Id.* At all times, the plaintiff retains the burden of persuasion to demonstrate that the adverse employment decision was made because of her age. *See Schoonmaker*, 595 F.3d at 264.

Wal-Mart concedes that Richardson established a *prima facie* case of age discrimination. However, Wal-Mart argues that it offered a legitimate, nondiscriminatory reason for Richardson's termination: Richardson "engaged in unsafe work practices in violation of Wal-Mart's safety policies and her conduct brought her to the fourth and final step of the company's progressive discipline policy." Because Richardson already had received three coachings as part of Wal-Mart's disciplinary process, Wal-Mart argues that her subsequent workplace-safety misconduct was grounds for termination.

To rebut the employer's proffered legitimate, nondiscriminatory reason, the employee must show that the reason "(1) has no basis in fact, (2) did not actually motivate the [employer's] challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano*, 663 F.3d at 815 (internal citation and quotation marks omitted). In essence, to establish that Wal-Mart's rationale was pretext for discrimination, Richardson must show that Wal-Mart's "'business decision' was so lacking in merit as to call into question its genuineness." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 625 (6th Cir. 2006) (citation and internal quotation marks omitted). Richardson attempts to rebut Wal-Mart's stated nondiscriminatory reason through an evidentiary argument and a factual one. She first argues that the coachings initiated against her were fabricated and inadmissible because the documentation of the coachings is "unverifiable [and] arise[s] for the first time, in litigation," is not signed, and was not made part of Richardson's personnel file in violation of a Michigan personnel-records statute. Second, she

attacks the factual basis for the coachings and argues that each coaching was illegitimate for various reasons.  Neither of these arguments is persuasive.

Richardson's evidentiary arguments relating to the authenticity of the coaching documents are meritless because the coaching documents were attached to notarized declarations from Wal-Mart managers with personal knowledge of the coachings.  *See* Fed. R. Evid. 901. Moreover, as the district court noted, Richardson's arguments "ignore the fact that plaintiff, herself, has acknowledged that each occurred."  Richardson testified during her deposition that she saw electronic copies of her second and third coaching documents during her coaching sessions.  She also testified that she typed an action plan into both coaching documents and that she entered her Wal-Mart user ID and password on the second coaching document.[3]  Although the coaching documents were not signed by hand, they were acknowledged electronically by the employee and managers using their user IDs and passwords, and under Michigan law, electronic signatures have the same legal effect as handwritten ones.  *See* Mich. Comp. Laws § 450.837.

Although Richardson disputes that the first coaching was a disciplinary action, she concedes most of the facts relating to the first coaching, including that:  she attempted to assist in the exchange of her daughter's laptop; she spoke with an electronics associate and customer service manager regarding the exchange; and she met with managers Borema and Lab to discuss the incident.  Richardson stated that she never saw the first coaching document before this litigation, but a first-written coaching (previously called a "verbal coaching") does not require an action plan or electronic acknowledgment by the employee.  As Richardson herself explained during her deposition, a verbal coaching occurs when managers "take you into the office and talk to you about [the event] . . . basically a warning, a heads-up."

Richardson also argues that the coaching documents should be excluded under Michigan law because copies of those documents were not in Richardson's paper personnel file.[4]  The

---

[3]Richardson was not asked during her deposition to confirm that she entered her user ID and password on the third coaching document.  However, her user ID appears at the bottom of the third coaching document. Richardson also concedes in her appellate brief that the third coaching occurred.

[4]According to Wal-Mart, copies of the coaching documents were stored in Wal-Mart's electronic system rather than in an employee's paper personnel file.  Richardson offers no facts to dispute that the coaching documents were stored electronically.

relevant Michigan statute requires that an employee has a right to review her personnel file upon written request.  Mich. Comp. Laws § 423.503.  Nothing in that statute dictates that all records relating to an employee must be maintained in a paper-file format.  *See id.*  Moreover, there is no indication in the record that Richardson requested her personnel file in writing.  She cannot claim relief under a statute she never properly invoked.

Richardson's attacks on the factual basis for each of the coachings are similarly unsuccessful.  Aside from disputing her first coaching on the grounds that the laptop incident did not constitute disciplinary action, Richardson argues that her first coaching was illegitimate because her managers failed to recall the implicated policy that she purportedly violated; however, as discussed above, Richardson does not dispute that the laptop incident occurred, and none of the managers Richardson rebukes for faulty recollection was involved in her first coaching.  Richardson insists that her second coaching could not be proper because she received a positive performance-evaluation one month after the coaching, but the evaluation and the coaching related to different aspects of her work.  She also argues that the second coaching was illegitimate because Darby could not recall the factual circumstances that led to that coaching, but Darby testified during his deposition that Richardson received the coaching because he and another manager concluded that Richardson had mispackaged an item.

Though Richardson concedes that the third coaching occurred, she disputes the basis for the coaching.  However, the record reflects that Richardson accrued four unscheduled absences within a six-month period in violation of Wal-Mart's attendance policy, thus justifying further disciplinary action.  In challenging her fourth level of coaching, Richardson asserts that "none of [her] managers had personal knowledge of any policy or standard related to this coaching," but this assertion again is unsupported.  In fact, three managers concluded that Richardson failed to comply with Wal-Mart's workplace-safety standards.  Richardson also disputes the fourth coaching by insisting that other employees who engaged in less safe conduct were not disciplined, but the record reflects that the store "has issued similar coachings to other associates who have failed to follow proper workplace safety standards." The record also reflects that Wal-

Mart associates younger than Richardson have received coachings (and have been fired) under circumstances similar to Richardson's.**5**

Even if Richardson can dispute successfully one or more of her coachings, Wal-Mart still would be entitled to summary judgment under the honest-belief rule. Under this rule, an employer may "avoid a finding that its claimed nondiscriminatory reason was pretextual" if the employer can "establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) (internal quotation marks and citation omitted). To rebut the employer's invocation of the honest-belief rule, the employee "must allege more than a dispute over the facts upon which [the] discharge was based." *Id.* (internal quotation marks and citation omitted) (alteration in original). Instead, the employee "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Id.* (internal quotation marks and citation omitted).

Here, Richardson offers no evidence that Darby, the supervisor responsible for firing her, did not honestly believe that Richardson's coaching history justified the termination decision. Darby reasonably relied on the fact that Richardson had three prior coachings in her record. Darby reviewed each of those coachings, and he terminated her employment based on her coaching history and her violation of Wal-Mart safety standards. Even if Darby might have concluded upon closer review that one or more of Richardson's coachings should have been removed from her record, "[a]n employer's pre-termination investigation need not be perfect in order to pass muster under the rule." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 591 (6th Cir. 2014) (citation omitted). "The honest-belief rule provides that an employer is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Id.* at 590-91 (internal quotation marks and citation omitted). Because Darby "made a reasonably informed and considered decision," *id.* at 591 (internal quotation

---

**5**Richardson also argues that the fourth coaching did not qualify "as a terminable event" because the coachings "expire or 'roll off' one year from the date they are issued." Richardson misunderstands Wal-Mart's coaching policy. The expiration date of a coaching is relevant in determining only whether the employee's conduct warrants escalation to the next level of coaching. Once a coaching is issued, the level assigned to that coaching does not change. Because each escalation of Richardson's coaching levels occurred within one year of the immediately preceding coaching level, her coachings and subsequent termination are consistent with Wal-Mart's coaching policy.

marks and citation omitted), when he decided that Richardson's conduct merited a fourth level of coaching and thus termination under Wal-Mart's coaching policy, Wal-Mart is entitled to the protection of the honest-belief rule. Richardson's circumstantial-evidence argument for her age-discrimination claim thus fails because she failed to satisfy her burden of demonstrating that Wal-Mart's proffered reason for termination was mere pretext for unlawful discrimination.

## CONCLUSION

Richardson failed to put forth any direct or circumstantial evidence that would create a genuine dispute of material fact concerning her claim of age discrimination. Thus, we AFFIRM the district court's grant of summary judgment to Wal-Mart.