**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0629n.06

**No. 18-1400**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LYNDA KINCH, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Dec 19, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| PINNACLE FOODS GROUP, LLC, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Defendant-Appellee. | ) | DISTRICT OF MICHIGAN |
| | ) | |

BEFORE: COLE, Chief Judge; GRIFFIN and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Lynda Kinch sued her former employer, Defendant Pinnacle Foods Group, asserting various state-law claims arising from her termination. The district court granted summary judgment in Pinnacle's favor. Kinch now appeals, arguing that her claims should have gone to a jury. We affirm.

I.

In the 1990s, Kinch began working at a pickle-packaging plant. Back then, Campbell Soup Company owned the plant. In 2001, Pinnacle acquired it. The company offered Kinch continued employment as an at-will employee. She accepted. Soon after signing her employment offer, she signed a confidentiality agreement that also said she was an at-will employee. She eventually became a Human Resources Supervisor.

Kinch wasn't the best employee. In 2010, 2011, and 2012, she received negative evaluations for talking down to others and using too forceful a tone, which made some employees feel uncomfortable talking to her.

In early 2013, Kinch submitted a sexual-harassment complaint alleging that an Operations Manager had made offensive comments to her and others. Pinnacle investigated her claim and fired the employee. Kinch, meanwhile, went on medical leave because of the harassment.

When she returned, her behavior didn't improve. Employees continued to complain about how abrasively Kinch treated them. After receiving multiple complaints, Pinnacle put Kinch on final warning: any further problems would lead to her termination.

A few months later, Pinnacle hired a new Human Resources Manager (Kinch's direct supervisor). In speaking with various department leaders to understand how the human-resources department could best serve the company, the HR Manager learned of Kinch's rude demeanor. He then got a first-hand look at that demeanor when Kinch took issue with a newsletter he had written by complaining about it to the Plant Manager instead of talking to him directly. At a meeting to discuss what had happened, Kinch looked at a clock and asked whether they were "really going to sit [t]here and waste an hour" talking about the issue.

Early in 2014, the HR Manager began to write Kinch's 2013 performance review. As he drafted it, he realized that Kinch hadn't improved her demeanor despite repeated coaching and that she hadn't shown any desire or willingness to change her ways. He then decided to fire her—a decision his supervisors approved. So Pinnacle terminated Kinch's employment, and a younger male replaced her.

Kinch then sued Pinnacle in state court, asserting five claims under Michigan law:

1. Legitimate Expectation [of just-cause employment];

2. Discharge Against Public Policy and Retaliation in Violation of [the Michigan Civil Rights Act];

3. Age Discrimination in Violation of [M]CRA;

4. Sex Discrimination in Violation of [M]CRA; and

5. Action to Compel Compliance with Bullard-Plawecki Employee Right to Know Act.

Pinnacle removed the case to federal court, then moved for summary judgment on the first four claims (by then, Kinch had received her personnel file, which rendered her fifth claim moot). The district court granted Pinnacle's motion in its entirety.

Kinch now appeals.

## II.

We review de novo the district court's grant of Pinnacle's summary-judgment motion. *U.S. SEC v. Zada*, 787 F.3d 375, 380 (6th Cir. 2015). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## A.

Kinch's first claim is that Pinnacle could fire her only for good cause (in other words, that she had "just-cause" employment instead of "at-will" employment). Her claim stems from a quirk in Michigan employment law. Although the default rule is that employment contracts create at-will employment unless they contain special provisions to the contrary, *see Lynas v. Maxwell Farms*, 273 N.W. 315, 316 (Mich. 1937); *Franzel v. Kerr Mfg. Co.*, 600 N.W.2d 66, 73 (Mich. Ct. App. 1999) (citing *Rowe v. Montgomery Ward & Co.*, 473 N.W.2d 268, 269–72 (Mich. 1991)), the Michigan Supreme Court has created an exception. If an employer's written policy statements

instill in employees a legitimate expectation that they may be terminated only for good cause, those statements create an enforceable contractual provision implied in law. *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880, 884–85 (Mich. 1980); *see also Lytle v. Malady*, 579 N.W.2d 906, 910 (Mich. 1998). Public-policy considerations underpin this anomaly. *Rood v. Gen. Dynamics Corp.*, 507 N.W.2d 591, 598 (Mich. 1993).

Yet the *Toussaint* rule is not without limits. The *Toussaint* court itself said that its creation would not affect explicit at-will employment contracts because employers were still "free to enter into employment contracts terminable at will without assigning cause." *Toussaint*, 292 N.W.2d at 890. Employers could do so, said the court, through contracts stating "that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer." *Id*. at 891 n.24. Later courts interpreting *Toussaint* have reached the same conclusion: *Toussaint* doesn't apply when the employer and employee have an express contract that addresses the nature of the employment relationship. *See*, *e.g.*, *Bracco v. Mich. Tech. Univ.*, 588 N.W.2d 467, 472 (Mich. Ct. App. 1998). Such overlap is impermissible because there cannot be an implied contract that covers the same subject as an express one. *See Steele v. Cold Heading Co.*, 336 N.W.2d 1, 2 (Mich. Ct. App. 1983).

To determine whether an employee has a legitimate expectation of just-cause employment, courts use a two-step analysis. The first step is to determine what, if anything, the employer promised employees. *Rood*, 507 N.W.2d at 606. If the employer made a promise, the second step is to determine whether it was reasonably capable of creating a legitimate expectation of just-cause employment. *Id*. at 607. If an employer never made a promise, or if any promises were insufficient to create a legitimate expectation of such employment, summary judgment is appropriate. *Id.*

(instructing courts to "dismiss the plaintiff's complaint on defendant's motion for summary disposition" (the Michigan equivalent to a federal summary-judgment motion)).

Here, Kinch was an at-will employee. The offer letter she signed said as much. So did her confidentiality agreement. In other words, Pinnacle did exactly what *Toussaint* instructed an employer to do to avoid uncertainty over what type of employment it offered employees. 292 N.W.2d at 891 n.24. Because Kinch signed express contracts saying her employment was at will, there can be no implied contract saying the opposite. *See Steele*, 336 N.W.2d at 2.

Kinch argues that these agreements ended when a series of mergers and acquisitions shook up the company's ownership. The premise for her position is what she calls a "general proposition" of state contract law: "contracts are binding only on the original parties to [them]." Her legal support for this proposition, however, provides no support at all because it (1) comes in dicta; (2) analyzes federal law, not Michigan law; and (3) says that only *nonconsenting* successors are not bound to a contract. *See John Wiley & Sons v Livingston*, 376 U.S. 543, 550 (1964) (holding that rights of employees under a *collective bargaining agreement* are not automatically lost by merger of the employer and that in some circumstances a successor employer may be required to arbitrate under the contract). Her argument therefore fails.

Even in the absence of her offer letter and confidentiality agreement, Kinch was still an at-will employee. She has identified no promise of just-cause employment that Pinnacle made to its employees generally or to her specifically. Rather than citing a policy or statement Pinnacle included in an official document such as an employee handbook—things that, had they existed, Kinch should have been able to identify with ease given her role in the company—she simply points to the company having had good reason to fire past employees, the subjective expectations of various employees, and the continued employment of Pinnacle's other employees. But

justification for past conduct isn't a promise about future conduct. Subjective expectations of just-cause employment are not legitimate expectations of it. *Schwartz v. Mich. Sugar Co.*, 308 N.W.2d 459, 462 (Mich. Ct. App. 1981). And at-will employment never becomes just-cause employment simply because the employer chooses not to fire its employees; to state such a proposition is to refute it. Because Kinch hasn't identified any promise of just-cause employment, Michigan's default presumption of at-will employment would apply even if we ignored the language in her offer letter and confidentiality agreement.

Pinnacle was therefore entitled to summary judgment on this claim.

B.

We now turn to Kinch's age- and sex-discrimination claims, which she brought under the Michigan Civil Rights Act ("MCRA"). We analyze MCRA age-discrimination claims using the same standard as claims brought under the Age Discrimination in Employment Act (although Michigan courts apply a different causation standard under the MCRA, which is a distinction without a difference here). 29 U.S.C. §§ 621–634; *Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 702–03 (6th Cir. 2016); *see also Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64 (Mich. 1997). And we analyze MCRA sex-discrimination claims using the same standard as discrimination claims brought under Title VII. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).

When a plaintiff seeks to prove discrimination by way of circumstantial evidence, both standards trigger the same burden-shifting analysis. *Richardson*, 836 F.3d at 704 (ADEA); *DiCarlo v. Potter*, 358 F.3d 408, 414–15 (6th Cir. 2004) (Title VII), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). The plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff makes that showing, then the employer must offer a legitimate, nondiscriminatory

reason for the adverse employment action. *Id.* at 802–03. And if the employer offers such a reason, then the plaintiff must show that it is pretextual. *Id.* at 804.

To make a prima facie showing of discrimination, a plaintiff must demonstrate that:

1. She is a member of a protected class;
2. She suffered an adverse employment action;
3. She was qualified for the position relating to the employment action; and
4.
   a. Someone outside the protected class replaced her or was chosen for the job; or
   b. Someone similarly situated to her but outside the protected class was treated better than she was.

*DiCarlo*, 358 F.3d at 415. Although Pinnacle does not contest the first three factors, the company argues that Kinch's showing fails as to the fourth because she never alleges that similarly situated employees outside her protected classes of age and sex received favorable treatment. This argument ignores the other way to meet the fourth factor. Because a younger male replaced Kinch, she has made a prima facie showing of both age discrimination and sex discrimination.

Pinnacle has also provided a legitimate, nondiscriminatory reason for firing her: she was rude to others and refused to change.

That brings us to whether Kinch has shown that the company's reason for firing her was pretextual. To make that showing, she must demonstrate that the reason (1) has no basis in fact; (2) did not actually motivate the decision; or (3) was insufficient to warrant the decision. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007). She goes the third route, which requires evidence that employees outside the protected class engaged in "substantially identical conduct" and fared better than she did. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) *overruled on other grounds by Gross*, 557 U.S. at

180. In the past, and without explaining why, we have equated this standard with the "similarly situated" standard from the prima-facie stage despite the former's focus on actions rather than actors. *See*, *e.g.*, *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 469, 482 (6th Cir. 2014); *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000). Regardless, the Michigan Supreme Court has said that for a plaintiff to prove pretext, she must show that she "was treated differently from similarly situated employees." *Lytle*, 579 N.W.2d at 917. For both discrimination claims, then, Kinch must provide evidence that similarly situated employees outside her protected class received better treatment than she did.

Kinch has not met her burden because she has provided no appropriate comparators. In the disciplinary context, employees are similarly situated if they deal with the same supervisor, are held to the same standards, and engage in the same conduct such that no differentiating or mitigating circumstance distinguishes their conduct or the employer's treatment of them for it. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Rather than attempting to meet this standard, Kinch asks us to relax it. To support her request, she invokes our opinion in *Jackson v. FedEx Corp. Services*, 518 F.3d 388, 394 (6th Cir. 2008), which she says held that comparators need not be similarly situated in every aspect because such a requirement would remove employees occupying unique positions from the protective reach of anti-discrimination laws. She was the only supervisor who reported to *her* supervisor, she submits, so we must compare her to other supervisors and managers. And eight other supervisors or managers violated company policy without reprimand, she contends, which makes it "quite clear" that she was treated differently from similarly situated employees.

This argument misrepresents our holding in *Jackson*. There, we faulted the district court for "impermissibly plac[ing] a burden of producing a significant amount of evidence in order to establish a prima facie case"—something we said was "not appropriate at the prima facie stage, but rather is better suited for the pretext stage that occurs later." 518 F.3d at 396 (emphases omitted). The relaxed standard Kinch requests therefore plays no role in the pretext analysis. And for good reason. If the treatment of other employees is to show that the proffered reason for a plaintiff's treatment is not the real reason for that treatment, the comparison must be apples to apples. If different supervisors treat different employees with different responsibilities differently for the same conduct, it doesn't follow that discrimination motived the disparate treatment. It might be that the supervisors took differing views of the conduct. Or perhaps the different job responsibilities demanded different behavior. In other words, requiring employees to be similarly situated removes confounding variables such as supervisor discretion and job-duty mismatch. The uncertainty those variables create has no place at the pretext stage, which imposes a higher threshold than the prima facie stage does.

In the absence of evidence that similarly situated employees received favorable treatment, then, Kinch's discrimination claims fail as a matter of law. Pinnacle was therefore entitled to summary judgment on these claims.

C.

Finally, we address Kinch's retaliation claim. To begin, she has forfeited any challenge to how the district court resolved this claim because she failed to challenge that resolution in her statement of issues. *See* Fed. R. App. P. 28(a)(5) (requiring an appellant's opening brief to contain, under an appropriate heading, a statement of the issues presented for review); *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016) (noting that a party forfeits issues not raised in its

statement of the issues); *McCarthy*, 763 F.3d at 494 (issue forfeited where party failed to raise it in either her statement of the issues or argument section).

Even if we ignored her forfeiture, she has abandoned her argument by presenting a perfunctory one. She mentions her retaliation claim only twice in her opening brief. First, she says that if we relax the "similarly situated" standard, "it becomes quite clear that she has established retaliation." And second, in her conclusion she asks us to remand the case so she may seek damages to remedy Pinnacle's "retaliation . . . against her." Kinch presents a skeletal argument, leaving us to put flesh on its bones. This she may not do. *United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016).

And even had she presented more than cursory assertions of error, her argument would fail on the merits. She brought a two-in-one claim, alleging both a discharge against public policy and a violation of the MCRA. Pinnacle was entitled to judgment as a matter of law on her public-policy claim because the MCRA prohibits retaliation, Mich. Comp. Laws § 37.2701(a), and because, under Michigan law, a public-policy claim is viable only when there is not already a statutory prohibition against the conduct at issue. *Dudewicz v. Norris-Schmid, Inc.*, 503 N.W.2d 645, 650, (Mich. 1993) *overruled in part on other grounds by Brown v. Mayor of Detroit*, 734 N.W.2d 514 (Mich. 2007). And Pinnacle was entitled to judgment as a matter of law on her MCRA claim because she conflates the prima facie factors for a retaliation claim with those for a discrimination claim. The Michigan Supreme Court has adopted the Title VII prima facie factors for MCRA retaliation claims, *see Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (citing *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646 (Mich. 2005), the fourth factor of which requires a causal connection between a plaintiff's protected activity and the adverse employment action she suffered, *id.* at 468–69. Thus, unlike a discrimination claim, a

retaliation claim has nothing to do with similarly situated employees. Kinch cannot prove retaliation by invoking an irrelevant legal standard.

III.

For these reasons, we affirm the district court's judgment.