NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0446n.06

Case No. 21-6240

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

<table>
<tr><td>FRANK DAVIS,<br><br>    Plaintiff-Appellant,<br><br>v.<br><br>UNIVERSITY OF LOUISVILLE,<br><br>    Defendant,<br><br>UNIVERSITY OF LOUISVILLE PHYSICIANS,<br>INC.,<br><br>    Defendant-Appellee.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>**FILED**<br>Nov 07, 2022<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY<br><br>OPINION</td></tr>
</table>

Before: MOORE, THAPAR, and LARSEN, Circuit Judges.

THAPAR, J., delivered the opinion of the court in which LARSEN, J., joined. MOORE, J. (pg. 8), delivered a separate opinion concurring in the judgment only.

THAPAR, Circuit Judge. The University of Louisville Physicians ("ULP") fired Frank Davis because it believed he was a threat to his patients. Davis sued, believing ULP fired him because of his age. The district court granted summary judgment for ULP. We affirm.

I.

About ten months after ULP hired then-59-year-old Frank Davis as a surgical assistant, Davis's supervisor, Lisa Motley, met with him. She told him his performance was lacking, and she put him on a Performance Improvement Plan. The Plan identified problems with Davis's performance, including his inability to "harvest viable vein efficiently," his failure to proactively

contribute to procedures, and insubordination. It also warned that failure to improve could result in termination.

According to Davis, during the meeting, Motley remarked on Davis's gray hair and observed that as people "get older, things become more difficult to do." R. 52-2, Pg. ID 1049. So following that meeting, Davis filed three complaints of discrimination and retaliation: two internally and one with the Equal Employment Opportunity Commission ("EEOC"). In response to the first internal complaint, Dr. Mark Slaughter, the chair of the department, replaced Lisa Motley as Davis's supervisor.

But Davis kept making mistakes. On one occasion, Davis accidentally cut through a patient's endotracheal tube when removing surgical drapes, causing a problem with the patient's breathing. On another, Davis incorrectly handled a vein in the operating room, and it fell to the floor. Citing those two incidents, Dr. Slaughter ended Davis's employment.

In response, Davis sued ULP for age discrimination and retaliation under both federal and state law. The district court granted summary judgment for ULP. Davis appealed.

## II.

Davis faces a preliminary hurdle on this appeal. An appellant's opening brief must identify the issues he seeks to appeal. Fed. R. App. P. 28(a)(5). Davis's doesn't. His statement of issues merely notes that he is appealing the district court's grant of summary judgment. That is not a statement of the issues presented for review, so we could find that Davis forfeits his arguments. *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016); *Dimond Rigging Co. v. BDP Int'l, Inc.*, 914 F.3d 435, 449 (6th Cir. 2019); *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 796 (6th Cir. 2009). But even if we look past this forfeiture, Davis's arguments don't hold up.

Case No. 21-6240, *Davis v. Univ. of Louisville, et al.*

Davis sues for discrimination and retaliation under both state and federal law. Since the federal and state claims are analyzed in the same manner, they rise and fall together. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393–94 (6th Cir. 2008); *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984) (analyzing the plaintiff's state discrimination claim under the federal framework because the "Kentucky age discrimination statute is specially modeled after the Federal law"); *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 802 (Ky. 2004) (same).

A.

For Davis to prevail on his discrimination claims, he must show that age was the "'but-for' cause" of his termination. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009). Davis attempts to make that showing with both direct and indirect evidence. Neither approach succeeds.

1.

Start with direct evidence. To survive summary judgment, Davis must present evidence that, "if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014). And that evidence can't "require the fact finder to draw any inferences to reach that conclusion." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006). The only evidence Davis offers is Lisa Motley's statements during their meeting. But he leaves the fact finder to connect those statements to his termination in two ways.

First, statements can only suffice as direct evidence when they come from the decision maker himself. *Richardson v. Wal-Mart Stores, Inc.*, 836 F.3d 698, 703 (6th Cir. 2016). Since

Dr. Slaughter—not Motley—was the decision maker "responsible for the adverse employment decision," *id.*, Motley's statements don't cut it.

Attempting to remedy that insufficiency, Davis tries to link Motley to his termination. True, we've sometimes held that statements by someone with "significant influence" over the decision-making process qualify as direct evidence. *Sharp v. Aker Plant Servs. Grp.*, 726 F.3d 789, 798 (6th Cir. 2013). But Davis only posits that Motley was friends with Dr. Slaughter and that she forwarded complaints about Davis to HR. It's not clear how that proves Motley had "significant influence."[1]

Second, even if we assume Motley significantly influenced the decision-making process, her statements are still not enough. To be direct evidence, her statements would have to be so "blatant" that their "intent could be nothing other than to discriminate on the basis of age." *Id.* Though Motley's statements indicate that she may have attributed Davis's poor performance to his age, they don't demonstrate on their own that she targeted him because of his age. *See, e.g.*, *Curry v. Brown*, 607 F. App'x 519, 524 (6th Cir. 2015) (declining to apply *Sharp*'s analysis where a supervisor's statement linking an employee's "health" during family leave to her ability to "supervise" before demoting her didn't directly link the leave to the demotion). So Davis's purportedly direct evidence can't support his claims.

2.

Next, Davis presents indirect evidence of discrimination. The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) guides our analysis. *See Kline v.*

---

[1] In a footnote to his reply brief, Davis compares his theory of Motley's influence over the decision to the "cat's paw" theory of liability. *See* Reply Br. at 3 n.2. That theory allows an employer to be held liable for the discriminatory actions of an employee who didn't have a say in the ultimate decision. *Staub v. Proctor Hosp.*, 562 U.S. 411, 414 (2011). But Davis's only developed argument is that Motley *did* have a say in the decision to fire him. Further, discriminatory statements from a non-decision maker can't meet the direct-evidence standard, *see Richardson*, 836 F.3d at 703, so the cat's-paw theory would have been insufficient even if Davis had clearly invoked it.

*Tenn. Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997). First, a plaintiff must make a prima-facie case of discrimination. If the plaintiff presents a prima-facie case, the burden shifts to the defendant to provide a legitimate reason for the adverse action. Finally, the plaintiff can attempt to show that the purported reason is really a pretext for discrimination.

Davis skips over any prima-facie argument. A party forfeits an argument if he only mentions it "in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (cleaned up). Davis recites the correct legal test for a prima-facie showing of discrimination. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). But he leaves us to fill in what his prima-facie case would be. Because we can't proceed to the second and third steps of *McDonnell Douglas* without first establishing a prima-facie case, this forfeiture dooms Davis's claim.

Even if we disregard that forfeiture, Davis would fail at the pretext stage as well. To draw ULP's proffered reason into question, Davis has to explain why its reason is "unworthy of credence." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). ULP's proffered reason for its decision was patient safety. And it supported this reason with documentation of Davis's repeated errors and its decisional process. Davis's only refutation was testimony from another doctor saying he would not have fired Davis under similar circumstances. But that evidence only presented an alternative assessment of Davis's performance; it didn't give any reason that ULP's assessment was so unreasonable as to be a pretext for discrimination. Davis's indirect-evidence argument fails too.

## B.

Finally, Davis offers only indirect evidence on his retaliation claims, so we again apply the *McDonnell Douglas* framework. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009).

Starting with a prima-facie case, Davis must present evidence of: (1) his protected activity, (2) ULP's knowledge of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). The parties agree that Davis's internal and EEOC complaints were protected activity and that ULP knew of those complaints.

Davis argues that changes in his employment duties were adverse actions. True, duties harsh enough to deter a reasonable employee from complaining can be adverse actions. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). But Davis simply states what the changes were—if they were bad enough to deter a reasonable employee from complaining, he doesn't say why.

Davis also argues—and ULP doesn't contest—that his termination was an adverse action. Yet Davis's termination case fails at the causation stage. Causation requires evidence that ULP wouldn't have fired Davis if he hadn't filed his discrimination complaints. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). He points to the close timing of his termination to his complaints. But timing alone is not enough when the employer was already considering termination or when there was an intervening reason for it. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 471–72 (6th Cir. 2012). Both are true here. By the time Davis filed any complaints, ULP had already cautioned Davis that his performance wasn't up to snuff and warned that termination was on the table. And after Davis's complaints, he cut one patient's breathing tube and mishandled another patient's vein. Davis needed something more to show causation. Because he didn't present anything else, he hasn't made a prima-facie case, and his retaliation claims fall flat.

\*      \*      \*

Davis didn't properly present the issues in his brief.  And even if he had, he doesn't offer enough evidence for his claims to survive summary judgment.  We affirm.

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I concur in the judgment. I would assume that Davis made out prima-facie cases of age discrimination and retaliation but would hold that Davis failed to produce sufficient "evidence from which a jury could reasonably doubt" ULP's stated reasons for its adverse actions and thus failed at the pretext stages. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 508 (6th Cir. 2014).